CHARLES F. WILLIS, Appellant, *v.* BENJAMIN F. DAWSON, Respondent.

*Specific performance of a contract for the sale of land — when enforced although the plaintiff has not complied with all the terms of the agreement.*

On June twenty-third the plaintiff entered into a contract whereby he agreed to purchase from the defendant a piece of land for $18,000; of which $500 was then paid, and $5,500 was to be paid on the delivery of the deed, on July first, at 12 M., the remainder being paid by the assumption of a mortgage on the land. On the day named the parties met at the time and place named, and the defendant was ready to deliver a deed but the plaintiff refused to take it, alleging that he had endeavored to obtain a search of the title, but had been unable to procure it, and asking further time that he might do so. The defendant refused to give further time, and the parties separated. In the latter part of July the plaintiff brought this action to compel a specific performance of the contract: *Held,* that he was entitled thereto.

APPEAL from a judgment dismissing the plaintiff's complaint, entered upon a trial before the court without a jury.

*William Settle*, for the appellant.

*William D. Leonard*, for the respondent.

Daniels, J.:

The action was brought for the specific performance of an agreement for the sale of land situated in the twelfth ward of the city of New York. By the terms of the agreement the defendant agreed to pay the sum of $18,000 for the land, $500 at the execution of the contract, and which he in fact paid ; $5,500 on the delivery of the deed, which it was agreed should take place on the 1st day of July, 1882, at twelve o'clock, at the office of Gilbert S. Beekman, No. 5½ Pine street, and the remaining $12,000 by assuming a mortgage for that amount at the time on the property. The agreement was made on the 23d day of June in the year 1882, and at the time mentioned for its performance the parties met at the place appointed for that purpose, and the defendant was present with a deed which he was ready to deliver to the plaintiff, but the plaintiff had been previously endeavoring to obtain a search of the title to the property and had been unable to procure it, and for that reason declined to receive the deed and requested further time to enable him to ascertain the condition of the title. This was declined by the defendant and performance exacted at that time. The plaintiff was then unwilling to receive the deed and pay the residue of the purchase-money, and the parties thereupon separated. The plaintiff afterwards and during the latter part of the month of July, brought this action to obtain the specific performance of the agreement, alleging that he was then ready and desirous of carrying out the contract, but that the defendant was unwilling to perform it. And the fact that he declined to perform the agreement after the time of the interview at Mr. Beekman's office on the first of July, was not denied. The court considering that the plaintiff was in default in declining to accept the deed when it was ready for delivery to him on the first of July, held that he was not entitled to maintain the action. But while the contract contained no agreement concerning the procurement of a search, or the production or exhibition of an abstract of the title, it was only a reasonable precaution on the part of the plaintiff to endeavor to obtain a search himself before he completed the performance of the agreement. Ordinarily, "a

purchaser may require to be furnished with an abstract prepared in the usual way, even though he had agreed to accept the title." (Dart on Vendors and Purchasers, 130.) And this principle, though perhaps not strictly applicable to agreements for the sale of real estate in this State, would sanction and sustain the right of the purchaser to obtain a search of the title at his own expense before completing the purchase by the payment of the money and the acceptance of a deed. Certainly the step would be one so prudent in its character as not to render him chargeable with laches during the time necessary for that purpose, if he exerted himself with all proper diligence to obtain the requisite search of the title. And that the defendant did make such exertions was reasonably clear from the evidence given in the case. Efforts were made to obtain a search, but it could not be procured by the time mentioned in the agreement for its performance by the delivery of the deed and the payment of the purchase-price. It was entirely reasonable, therefore, for the plaintiff to ask such further indulgence as had become necessary to enable him to obtain a search of the title to the property. The defendant was not required to furnish it, but all that was desired was that an adequate opportunity should be afforded the plaintiff to enable him to obtain it for himself. That was all that was desired by the plaintiff and as long as no change is alleged in any form to have taken place in the condition of the property or in the affairs of the defendant himself, by reason of the plaintiff declining to accept the deed without a search, it was unreasonable to refuse his request for further time. If the property was in danger of depreciating in value, or any other adequate reason could be assigned for it, the case would be different, but no fact intervened or was apprehended excusing the denial of the plaintiff's request, other than the defendant's determination that the contract should be performed at the time designated for that purpose, or it should be abandoned. This conduct was not such as to commend itself to the approval of a court of equity, for where time has not been made essential by the contract, and it was not by the agreement in suit, there an excusable default on the part of the purchaser will not justly subject him to a forfeiture of his rights where he has failed to perform on the specified day. On this subject it has been said that, "courts of equity have regard to time, so far as it respects the good faith and diligence of the parties.

But if circumstances of a reasonable nature have disabled the party from a strict compliance, or if he comes *recenti facto*, to ask for a specific performance, the suit is treated with indulgence, and generally with favor, by the court. But then, in such cases, it should be clear that the remedies are mutual; that there has been no change of circumstances affecting the character or justice of the contract; that compensation for the delay can be fully and beneficially given; that he who asks a specific performance is in a condition to perform his own part of the contract; and that he has shown himself ready, desirous, prompt and eager to perform the contract." (1 Story Eq. Jur. [12th ed.], § 776.)

The plaintiff's case is within this statement of the equitable rule which is sustained very generally by the authorities, for circumstances of a reasonable nature did disable him from a strict compliance with the contract at the time specified for its performance. He had not then been able to obtain a search of the title which it would have been imprudent for him to have received without the search. And all the delay that intervened, between the making of the contract and the commencement of the action, seems to have been probably consumed in obtaining the necessary information to enable him to determine whether he should accept the title or not. And after reaching the conclusion that the title was one which could be safely accepted he did come immediately after the fact to the court to ask for a specific performance of the agreement, and that ought, under the circumstances, to have entitled him to relief. The case in this respect is quite similar in several of its leading attributes to that of *Hubbell* v. *Von Schoening* (49 N. Y., 326), where it was said that "when time has not been made essential * * * if the delay is excused, and the situation of the parties or of the property is not changed so that injury will result, and the party is reasonably vigilant, the court will relieve him from the consequences of the delay and grant a specific per- formance." (Id., 331.) And the same principle was further sanctioned in *Delevan* v. *Duncan* (Id., 485, 488), where the court approved of the equitable principle as it had been stated in *Taylor* v. *Longworth* (14 Peters [U. S.], 172), where it was said that " relief will be given to a party who seeks it if he has not been grossly negligent and comes within a reasonable time, although he has not complied with the

strict terms of the contract. But in all such cases the court expects the party to make out a case free from all doubt, and to show that the relief which he asks is, under all the circumstances equitable, and to account, in a reasonable manner, for his delay and apparent omission of his duty." (Id., 488, 489.) All these requirements were observed by the plaintiff in this action for he did apply within a reasonable time for the benefit of his contract. An ample excuse was presented and sustained for declining to perform at the date mentioned in the agreement, and it was evident that no circumstances had intervened affecting either the situation of the defendant or of the property rendering it inequitable to afford the relief applied for by the plaintiff. *Merchants' Bank* v. *Thomson* (55 N. Y., 7) has also followed the same rule. It was there stated that " the true rule must be that, if the delay of itself is unreasonable and unexcused, it is enough to relieve the unwilling party from the contract, and that delay, though not in itself unreasonable, if it has made way for an intermediate and material change of circumstances, detrimental to the interests of defendant if obliged to perform, will have the same effect, but that in the latter case it must so appear to the court from the facts shown in the case." (Id., 16.) As already observed the delay was not unreasonable and it was fully excused, and no change whatever was shown to have taken place during the time either in the condition or situation of the property or in the affairs of the defendant himself. And no different principle was suggested or applied in the later case of *Lawrence* v. *Miller* (86 N. Y., 131). The plaintiff was at all times desirous of obtaining the title to the property under the contract entered into with the defendant, provided that could be done with safety to himself. Whether it could or not, could only be determined by a search of the title, there was no omission of diligence on his part in endeavoring to obtain such a search, and all the delay requested by him was so much only as would enable him to obtain it. This was entirely reasonable in itself. It was no more than a safe and proper precaution on his part, and as long as it could have been conceded without any detriment or injury to the defendant or the property, and compensation for it could be provided by adding interest to the purchase-money, it should have been conceded by the defendant. His conduct in this respect was harsh

and unreasonable, and it should not be so far approved by a court proceeding upon equitable principles as to enable him to relieve himself from the performance of this agreement under the circumstances made to appear. The entire delay did not exceed the period of about three weeks, and justice to his own interests, as well as prudence in his own conduct, justified the plaintiff in requesting this short period of delay.

The case was one in which the plaintiff's complaint should not have been dismissed, but a specific performance of the agreement should have been directed by a proper judgment to be entered in the action. That cannot be done on this appeal, for the facts, although proved by the evidence, have not been found by the judge before whom the trial took place establishing the plaintiff's right to such a performance.

The judgment should be reversed and a new trial ordered, with costs to the plaintiff to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, costs to plaintiff to abide event.