Truax, J.
The judgment that the defendant, the mayor, etc., seeks to open was entered on the 11th day of January, 1876. Two questions are 'presented to the court by this motion. The first one is, has the court power to vacate or amend its judgment thirteen years after the •entry thereof? And the second one is, is this a case in which the court should exercise such power, if it has it?
In Hogan v. Hoyt (37 N. Y., 300), the court of appeals held that a judgment of foreclosure and sale, which had been entered in January, 1855, was properly amended nunc pro tune in 1864. “The question,” said the court, “was one addressed to the discretion of the court below.”
In Hatch v. Bank (78 N. Y., 487), the court of appeals held that it was within the discretion of the court in which a judgment is entered to vacate a judgment at the request of the plaintiff, although the order to vacate the judgment was not made until a year after the judgment had been satisfied. The judgment was satisfied August 7, 1876. The order granting the motion to vacate the j udgment was made February 5, 1879. “The power to amend,” said the court of appeals, “is an inherent power, and not limited in matters of substance by the sections of the Code (section 174 of old Code, section 724 of new Code), while section 723 seems to authorize its exercise in the furtherance of justice.”
In Farish v. Austin (25 Hun, 430), the supreme court ha the first department set aside a judgment sixteen years after its entry. These cases show that a court has power to set aside a judgment, although more than one year has passed since tlae entry of the judgment.
Is this case, one in which the court should exercise such power? The action was brought to foreclose a certain mortgage made by the Hew York City Central Underground Railway Company. The city of Hew York was made a party to that action, but it was alleged in the complaint that it was made a party, “because the plaintiff was informed that the city might have or claim an intei*est in the property covered and conveyed in the two mortgages mentioned, and in the relief demanded in the complaint. Ho claim or demand is made against the said mayor, aldermen and commonalty of the city of Hew York.”
The relief demanded was that the plaintiff have judgment for a certain sum of money, and the costs of the action; that it be adjudged that the mortgage dated July 1,1873, be foreclosed, and also that said company, and all claiming under it, be foreclosed of the right to perform any of the agreements in the instrument dated July 13, 1875; that the mortgaged franchises and property be sold and the proceeds applied to satisfy the indebtedness due plaintiff; that a certain mortgage be canceled; that the said company, its officers and agents, be enjoined and restrained from issuing bonds under said mortgages, and from incumbering or interfering with its property; and that the court grant such *804 other and further relief as may be equitable and just in the premises. There is nothing in this demand for relief that affects the city. The only parties who could be “foreclosed ” are those who claimed under the company.
There is no allegation in the complaint that affects in any way the city, except the allegation that it might have or claim an interest in the property conveyed in the mortgages mentioned in the complaint, and in the relief demanded in the complaint, and this allegation was joined to the statement that no claim or demand was made, and no relief was demanded, against the city, because there is nothing to show that the city claimed under the New York Central Underground Railway Company. But the judgment that was entered did very materially affect the city. It was adjudged, among other things, that all the allegations contained in the complaint were true in manner, form and substance; that the said New York City Central Undérground Railway Company owned the right and occupancy,» seizure and possession of the land, premises and grounds afterwards described in the judgment, for the use and purpose of constructing, maintaining and operating a double-track railway; for the use and purpose of constructing, maintaining and operating a branch railway to the Central park, and railway connections with steam and horse railroads; to make an.d maintain double or single tunnel or tunnels or subways, for the same; to light, ventilate' and drain such tunnels or sub-ways; to make, construct and' maintain openings for ventilation or light extending from such tunnel, tunnels or subways to the outer edges of the sidewalks of the streets or avenues, or to the surface of the squares under which the same shall be constructed; to construct maintain and operate an elevated railway from Ninety-ninth street to and along the Harlem river on said lands and premises; to construct and .maintain the proper platforms, stations and buildings thereon and therein; to make and maintain the necessary connections, turn-outs, sidings, switches, and other conveniences for the proper working and accommodation of said railways.
The judgment then proceeded to lay out the route of the road. It also adjudged that the said railway company, prior to the 10th of May, 1871, commenced the construction of the tunnel and railway which by statutes the said railway company was authorized to construct and operate; that the workmen of said railway company were employed for several weeks thereafter at the excavation and masonry for the tunnel wall of said railway, and that “said corporation defendants, their officers and servants, will respect the aforesaid orders, judgments and decrees herein.”
This judgment, as far as it affects the defendant, the mayor, aldermen, etc., of the city of New York, was erroneous. There was no allegation in the complaint that the mortgage was prior, superior, or hostile to the interest *805 of the defendant, the mayor, aldermen, etc., of the city of New York, and the only effect that such judgment could rightly have against the city would be to cut off any rights that it had which were subsequent to the mortgage. It has been held that a foreclosure action is not the proper mode to litigate rights claimed in priority or in hostility to the mortgage. Bank v. Thompson, 55 N. Y., 7. Under the authority of this case, the adjudications against the defendant, determining the route of the' road, and that the New York Central Underground Railway had commenced operations in building the road, as required by the statutes creating the company, were unauthorized, and voidable, because there was no allegation in the complaint that warranted such a relief, and no such relief was demanded in the complaint.
It may be that the defendant, the mayor, etc., of the city of New York, is not bound by this judgment, and that they could attack the judgment at any time collaterally; but the cases' first above cited show that they have the right to move, to correct or amend, or modify this judgment, and they should not be compelled to await until the judgment is used as a means of offense against them before they attack it. The court had no jurisdiction to make the judgment that was made, and this want of jurisdiction may be set up collaterally, or otherwise. Kamp v. Kamp, 59 N. Y., 217. It was said in this last mentioned case that the want of jurisdiction to make the judgment, complained of may be set up by the defendant as a defense, but the defendant is also at liberty, by a more direct and: summary proceeding, to have the judgment set aside and vacated.
The motion to amend the judgment, by striking out the portion referred to, is granted, with ten dollars’ costs. The order may be settled on two days’ notice.